IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ROBERT DRAFT**                                                                                                    **PETITIONER**

v.                                                         No. 4:22-cv-00499-JTK

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                                              **RESPONDENT**

**ORDER**

**1.** Robert Draft seeks *habeas* relief from his state court convictions for second-degree murder and second-degree battery and from his aggregate sentence of fifty-one years. Draft was charged in the White County Circuit Court with first-degree murder in the death of his father-in-law, Douglas Cloyes, and with second-degree battery of his wife, Kathie Cloyes (formerly Draft). Draft testified at trial, admitting that he beat his wife and killed his father-in-law. He said that he shot his father-in-law because "[h]e was shooting at me and was—going to kill me." *Doc. 9-3 at 130.* The jury found Draft guilty of the lesser-included offense of second-degree murder and of second-degree battery. He challenged only the second-degree murder conviction on appeal, arguing there was insufficient evidence to support the murder conviction. The Arkansas Court of Appeals affirmed the conviction and sentence, *Draft v. State* (*Draft I*), 2016 Ark. App. 216, 489 S.W.3d 712. The Court of Appeals also affirmed the denial of post-conviction relief. *Draft v. State* (*Draft II*), 2020 Ark. App. 171, 596 S.W.3d 585. On January 22, 2021, Draft, who was incarcerated in a prison in Lee County, filed a *pro se* petition in the Lee County Circuit Court. Although the paper was styled as a *habeas corpus* petition based on actual innocence, Draft raised an ineffectiveness claim, arguing his trial lawyer failed to explain to the jury the "concept of extreme emotional disturbance manslaughter." *Doc. 6-10 at 1.* According to the online docket of

the Lee County Circuit Court, the petition remains pending.[1]  Draft filed his federal *habeas* petition on May 31, 2022.  *Doc. 2.*

On October 7, 2022, United States District Judge Lee P. Rudofsky reassigned this case to Magistrate Judge J. Thomas Ray pursuant to the parties' consent to a United States Magistrate Judge's jurisdiction.  *Doc. 13.*  On April 10, 2023, the case was reassigned to the undersigned.  *Doc. 20.*

2. The Arkansas Court of Appeals summarized the facts underlying Draft's convictions:

> On May 18, 2014, appellant became angry at his wife and beat her badly both with his hands and with the butt of a shotgun.  She managed to escape and drove approximately 200 yards up a gravel driveway to her parents' home.  Mrs. Draft's mother then drove Mrs. Draft to the hospital emergency room.  Mrs. Draft's father, Douglas Cloyes, remained at his home.  Mr. Cloyes was standing near the gravel driveway, and appellant parked his truck in the grass between Mr. Cloyes and the house.  According to appellant, Mr. Cloyes began shooting at him.  Appellant testified that he then reached back into his truck, grabbed his rifle, and began firing at Mr. Cloyes.  Mr. Cloyes was hit by five rounds from appellant's rifle and died as a result.  Appellant returned to his home, gathered some money and a telephone, disassembled the rifle and threw it in a river, and drove to Michigan.  A .22-caliber pistol was found under Mr. Cloye's body, and three spent .22 cartridges were found nearby.  At least thirteen spent .223 cartridges were found approximately sixty-five feet from the body, at the site of truck-tire tracks in Mr. Cloye's yard.

*Draft I,* 2016 Ark. App. 216, *1–2, 489 S.W.3d at 714.

3. **Limitations Period.**  Payne contends the *habeas* petition was filed outside the one-year *habeas* limitations period and therefore must be dismissed.  The Arkansas Court of Appeals affirmed the judgment entered against Draft on April 20, 2016.  *Draft I,* 2016 Ark. App. 216, 489 S.W.3d 712.  Under state court rules, Draft had eighteen days to file a petition for review in the Arkansas Supreme Court.  Ark. Sup. Ct. R. 2-4(a) (2016).[2]  Because Draft did not petition the Arkansas Supreme Court for review, the judgment became final when the eighteen-day period

---

[1] Search ARCourts, https://caseinfo.arcourts.gov/opad/case/39CV-21-4 (last accessed April 7, 2025).
[2] Effective July 1, 2019, the limitations period for filing a petition for review is 28 days from the date of the Arkansas Court of Appeals decision.  Ark. R. Sup. Ct. 2-4(a) (2019); Ark. Sup. Ct. R. 2-3(a).

expired on May 8, 2016. *Gonzalez v. Thaler,* 565 U.S. 134, 137 (2012). The one-year limitations period therefore began running on May 9, 2016. 28 U.S.C. § 2244(d)(1)(A). *See* Fed. R. Civ. P. 6(a)(1)(A) (excluding from the time computation the day of the event that triggers the time period). The limitations period expired on May 9, 2017, absent any statutory tolling periods.

The limitations period is tolled when a properly filed application for "State post-conviction or other collateral review" of the judgment is pending. 28 U.S.C. § 2244(d)(2). Because Draft properly filed a petition for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure on June 7, 2016, statutory tolling is available. *Doc. 9-5.* Before statutory tolling began, the one-year limitations period ran for twenty-eight days from May 9, 2016, to June 7, 2016. After the Arkansas Court of Appeals affirmed the denial of post-conviction relief, *Draft II,* 2020 Ark. App. 171, 596 S.W.3d 585, Draft timely filed a petition for review in the Arkansas Supreme Court. When the Arkansas Supreme Court denied the petition on May 21, 2020, the tolling period ended. When the limitations period restarted on May 22, 2020, Draft had 337 days (365 days – 28 days), which ended on April 24, 2021, to file the federal *habeas* petition. Because April 24, 2021, fell on a Saturday, the *habeas* petition was due on Monday, April 25, 2021, absent another tolling period.

Payne argues the tolling period did not restart when Draft filed the pending state paper styled as a *habeas* petition on January 22, 2021, because Arkansas courts will treat the petition as an untimely Rule 37 petition for post-conviction relief. To be a "properly filed" application for state post-conviction relief that tolls the federal *habeas* limitations period, the state-court petition must be "in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8 (2000). "A properly filed application is one that meets all the state's procedural requirements." *Beery v. Ault,* 312 F.3d 948, 950–51 (8th Cir. 2002). Under Arkansas law, "[a]

3

writ of habeas corpus is proper when a judgment of conviction is invalid on its face or when a circuit court lacked jurisdiction over the cause." *Watkins v. Kelley,* 2018 Ark. 215, *2, 549 S.W.3d 908, 910.  Section 16-112-101 of the Arkansas Code Annotated provides for setting aside the judgment based on the discovery of new scientific evidence establishing the petitioner's actual innocence.  Because Draft raised an ineffectiveness claim, Payne is correct that Arkansas procedural rules require the Lee County Circuit Court to consider the petition under Rule 37 "regardless of the label given to it by the petitioner." *Morgan v. State,* 2009 Ark. 362, *1, No. CR-08-950.  Because Draft's first Rule 37 petition was not denied without prejudice, a subsequent Rule 37 petition is prohibited under state procedural rules.  *Id.* (citing Ark. R. Crim. P. 37.2(b)).  Even if a subsequent Rule 37 petition were permitted, Draft's petition is untimely because he did not file it within sixty days of the date that the direct-appeal mandate was issued on May 10, 2016.  *Id.* at *2 (citing Ark. R. Crim. P. 37.2(c)).  Draft's state-court petition filed on January 22, 2021, therefore does not toll the federal *habeas* limitations period.  Because Draft filed the federal *habeas* petition on May 31, 2022, and the limitations period expired on April 25, 2021, the petition was not timely filed.

Draft argues the limitations period does not bar his petition based on new evidence of actual innocence.  He says that he is actually innocent due to "structural errors in the jury instructions and *Brady* evidence from Michigan authorities withheld by the police." *Doc. 10 at 13.*  The United States Supreme Court has recognized that, when the petition is not timely filed under § 2244(d)(1)(D), the time bar can be overcome by a showing of actual innocence.  *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013).  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of new evidence, no juror acting reasonably, would

4

have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)).

Draft has not demonstrated actual innocence to overcome the expiration of the limitations period.[3] He has not presented "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. Jury instruction errors are not new evidence of actual innocence. Draft says that, when he was arrested in Michigan, law enforcement there recovered bullet fragments from his vehicle and took photographs of his truck. He says this evidence would demonstrate that his father-in-law provoked him by entering his property, fired the first shot, and hit his truck. Draft attaches twelve photographs purportedly taken by Michigan law enforcement to his petition, including eight photographs of his truck. *Doc. 2 at 44–46.* Draft, however, has not distinguished these photographs from the truck photographs that were taken by Detective Chancy Warden of the White County Sheriff's Department and introduced at trial. He offers no evidence that Michigan law enforcement recovered bullet fragments, and he does not make any convincing argument that the bullet fragments would demonstrate actual innocence. The existence of any bullet fragments would not provide evidence of the timing of the shots. The jury heard evidence that Draft's father-in-law fired three rounds from his .22-caliber pistol; the defense expert testified that the projectile hole in the truck headlight was consistent with a .22-caliber bullet. *Doc. 9-3 at 204–05.* Because Draft has not presented new reliable evidence demonstrating actual innocence, the *habeas* petition is time-barred and therefore dismissed.

---

[3] Draft does not argue that the limitations period is subject to equitable tolling. He has not pointed to any extraordinary circumstance that prevented timely filing of the petition. *Holland v. Florida,* 560 U.S. 631, 645, 649 (2010) (quotations omitted). Equitable tolling is proper "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Runyan v. Burt,* 521 F.3d 942, 945 (8th Cir. 2008) (quotations omitted).

**3. Claims For Relief.** This Court alternatively considers Draft's ineffectiveness claim challenging his trial lawyer's work related to jury instructions and his claim that the prosecution suppressed evidence in violation of *Brady v. Maryland*. Even if Draft timely filed the federal *habeas* petition, he is not entitled to relief.

Draft first argues that his trial lawyer's work related to the manslaughter jury instruction was constitutionally ineffective. Because the claim was adjudicated on the merits in state court, the claim is reviewed with deference to the state-court decision. 28 U.S.C. § 2254(d).

After Draft battered his wife with his gun and his fists at their home, she went to her parents' house "up the hill." *Doc. 9-3 at 134*. Draft's mother-in-law took his wife to the emergency room. Draft testified that, after the two drove away, he heard his father-in-law yelling for him to "come up there," he decided to "go up there and talk to him" because "the man has always been good to me and I owed him that." *Doc. 9-3 at 134*. Draft said that he did not expect a physical altercation. *Doc. 9-3 at 134–35*. He testified that, when he got out of his truck at his father-in-law's home, his father-in-law "got a gun and he's shooting at me and coming at me." *Doc. 9-3 at 135*. Draft said that he then got his rifle out of his truck, loaded it, and began shooting back. He testified that he was "freaking out," *Doc. 9-3 at 135,* and believed that his father-in-law was going to kill him. He said that he shot and killed his father-in-law in self-defense because he "just wanted to stop him from killing me." *Doc. 9-3 at 147*.

The trial court instructed the jury on first-degree murder and the lesser-included offenses of second-degree murder, manslaughter, and negligent homicide:

> Robert Draft is charged with First Degree Murder. This charge includes the lesser offenses of Second Degree Murder, Manslaughter and Negligent Homicide. You may find the defendant guilty of one of these offenses or you may acquit him outright. If you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of a lesser offense. If you have a reasonable

> doubt as to the defendant's guilt on all offenses, you must find him not guilty. [From AMI Crim. 2d 301 (AMCI 301)]
>
> \* \* \* \* \*
>
> If you have a reasonable doubt of the defendant's guilt on the charge of Murder in the First Degree you will then consider the charge of Murder in the Second Degree.
>
> \* \* \* \* \*
>
> If you have a reasonable doubt of the defendant's guilt on the charge of Murder in the Second Degree you will then consider the charge of Manslaughter.
>
> To sustain the charge of Manslaughter, the State must prove beyond a reasonable doubt that Robert Draft:  Caused the death of Douglas Cloyes under circumstances that would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse; or Recklessly cause the death of Douglas Cloyes. . . .
>
> \* \* \* \* \*
>
> If you have a reasonable doubt of the Defendant's guilt on the charge of Manslaughter, you will then consider the charge of Negligent Homicide.
>
> \* \* \* \* \* [From AMI Crim. 2d 302 (AMCI 302)]

*Doc. 9-3 at 247–52.*

The trial lawyer testified at the Rule 37 hearing that the defense theory was Draft killed his father-in-law in self-defense.  He admitted the jury was not properly instructed on extreme emotional disturbance manslaughter in light of state court precedent, but he did not believe the instructions "hurt" the defense theory. *Doc. 9-5 at 194.*  The circuit court denied post-conviction relief, finding the trial lawyer's work related to jury instructions was not constitutionally ineffective because the defense theory did not cover extreme emotional disturbance manslaughter.

On appeal, the State did not dispute that, based on state court precedent, the jury was improperly instructed on extreme emotional disturbance manslaughter.  Instead of having a less culpable mental state, this form of manslaughter adds an element—extreme emotional

7

disturbance—to first- and second-degree murder and therefore is not a "traditional" lesser-included offense. *Fincham v. State,* 2013 Ark. 204, 6, 427 S.W.3d 643, 647–48 (citation omitted). "One can kill purposefully or knowingly, as in first- and second-degree murder, and yet be guilty only of manslaughter" based on an extreme emotional disturbance. *Id.* (quotations omitted). In *Fincham,* the Arkansas Supreme Court held the model introductory instruction for lesser-included offenses, AMCI 301, did not accurately state the law because it instructed the jury not to consider extreme emotional disturbance manslaughter unless the jury had a reasonable doubt that the defendant committed murder. 2013 Ark. 204, *7–8, 427 S.W.3d at 648. The instruction is contrary to Arkansas law, which required the jury to first find the defendant committed murder before considering extreme emotional disturbance manslaughter. *Id.* *See* Ark. Code Ann. § 5-10-104(a)(1)(A)-(B) (Supp. 2013) (defining extreme emotional disturbance manslaughter). Draft argued his trial lawyer was remiss in not submitting an instruction based on AMI Crim. 2d 1004-A (AMCI 1004-A), adopted in response to *Fincham* for use with AMCI 301 and AMCI 302 and the manslaughter instruction (AMI Crim. 2d 1004) when the defense of extreme emotional disturbance is raised.[4] *Draft II,* 2020 Ark. App. 171, *4, 596 S.W.3d at 588.

---

[4] The law provides that if a person commits the offense of murder, but does so under the influence of extreme emotional disturbance for which there is reasonable excuse, that person has committed the offense of manslaughter rather than murder. You must determine reasonableness from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

(*Defendant*), in asserting the defense of extreme emotional disturbance, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of murder rather than manslaughter, you may find him guilty only of manslaughter.

Whatever may be your finding as to this defense, you are reminded that the State still has the burden of establishing the guilt of (*defendant*) upon the whole case beyond a reasonable doubt.

AMCI 1004-A.

The Arkansas Court of Appeals held that, even if the trial lawyer's performance related to jury instructions did not meet the constitutional standard, Draft did not demonstrate prejudice:

> As the State notes, Draft's defense at trial was self-defense, not extreme emotional disturbance. Draft testified that he drove to Cloyes's home because Cloyes yelled at him to come up there, but he did not expect a physical altercation. Draft said that his rifle was already in his truck and that he shot Cloyes because Cloyes was shooting at him when Draft got out of his truck. In closing arguments, trial counsel argued self-defense and expressly argued that the evidence did not support a verdict for extreme-emotional-disturbance manslaughter. Trial counsel explained to the jury that extreme emotional distress is when "you're freaking out" or "you kind of lose your senses and go far beyond what you need to do." He said that to find this the jury would have to find that Draft got mad and shot Cloyes in retaliation but "that's not what the evidence is."
>
> At the Rule 37 hearing, trial counsel testified that the nature of the defense was self-defense but that the jury instruction for extreme-emotional-disturbance manslaughter did not hurt the defense. Counsel said that at the time of trial, he was not familiar with the issue raised in *Fincham*. The prosecutor argued that not only did trial counsel not argue extreme-emotional-disturbance manslaughter to the jury, he did not propose the instruction for it. She said that the instruction "probably" came from her.
>
> Assuming that trial counsel was deficient in failing to request the jury be instructed with AMCI 1004-A, we hold that Draft has failed to establish a reasonable probability that the instruction would have made any difference in the outcome of his trial. To show prejudice under *Strickland* based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was "reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt." *Douglas*, 2019 Ark. 57, at 8, 567 S.W.3d at 490 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 390, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)). AMCI 1004-A is to be used in conjunction with AMCI 1004 when the defendant is asserting the defense of extreme emotional disturbance. Here, the defense was self-defense and was supported by Draft's testimony. In closing arguments, trial counsel argued that the evidence did not support a finding that Draft was acting under extreme emotional distress. We hold that the error in the instructions did not so prejudice Draft's defense that he was deprived of a fair trial. Accordingly, the circuit court's decision to deny his petition for Rule 37 relief was not clearly erroneous, and we affirm.

*Draft II,* 2020 Ark. App. 171, *6–8, 596 S.W.3d at 589–90.

The decision of the Arkansas Court of Appeals was not contrary to, or an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Court of Appeals properly applied the familiar *Strickland v. Washington* standard, requiring Draft to demonstrate his trial lawyer's deficient performance and resulting prejudice. 466 U.S. 688. The Court, moreover, properly considered whether Draft had demonstrated a reasonable probability that, absent attorney error, the outcome of the proceeding would have been different. *Id.* at 694. In considering *Strickland* prejudice, the Court was not unreasonable in its determination of the facts based on the state court record. Draft's self-defense theory was not prejudiced by the submission of the extreme emotional distress manslaughter instruction. There is not a reasonable probability that, if the trial lawyer had objected to the instruction, the jury would have found Draft not guilty of second-degree murder. Because Draft did not demonstrate *Strickland* prejudice, the Court of Appeals did not unreasonably deny the ineffectiveness claim. Under deference review, the claim fails. 28 U.S.C. § 2254(d).

Draft also raises an evidence suppression claim for the first time. He repeats his actual-innocence argument (for overcoming the untimely filing) that Michigan law enforcement failed to disclose truck photographs and bullet fragments. He says the evidence would have supported his testimony that he shot his father-in-law after his father-in-law "shot at him and tried to kill him." *Doc. 2 at 20.* Because there are no non-futile state remedies available, the claim is procedurally defaulted. Draft contends procedural default is excused based on actual innocence.

Because Draft has not demonstrated actual innocence for the reasons stated in this Order, procedural default is not excused. *See Schlup v. Delo,* 513 U.S. 298, 329 (1995). The claim also fails under alternative merits analysis. Draft has not demonstrated a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). For the reasons stated in this Order, Draft has not demonstrated

that the prosecution failed to disclose any evidence or that any suppressed evidence was material. If the jury had been aware bullet fragments from the truck driven by Draft, there is not a reasonable probability that the result of the proceeding would have been different. *Strickler v. Green,* 527 U.S. 263, 281–82 (1999). The existence of the fragments could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435 (1995).

*   *   *

For all the reasons stated, Draft's *habeas* petition fails and will be dismissed.

SO ORDERED this 14th day of April, 2025.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE